UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 24-cv-21362-GAYLES

**PURPLE INNOVATION, LLC,**

    Plaintiff,

  v.

**THE INDIVIDUALS, CORPORATIONS, LIMITED
LIABILITY COMPANIES, PARTNERSHIPS, AND
UNINCORPORATED ASSOCIATIONS IDENTIFIED
ON SCHEDULE A,**

    Defendants.
_____/

### ORDER GRANTING PLAINTIFF'S
### MOTION FOR PRELIMINARY INJUNCTION

**THIS MATTER** is before the Court upon Plaintiff's Motion for Temporary Restraining Order, Asset Restraint, Expedited Discovery, and Order to Show Cause as to Why a Preliminary Injunction Should Not Issue (the "Motion"). [ECF No. 15]. Plaintiff PURPLE INNOVATION, LLC ("Plaintiff" or "PURPLE INNOVATION") moves for entry of a preliminary injunction against Defendants, the Individuals, Business Entities, and Unincorporated Associations identified on the attached Schedule "A" attached (collectively "Defendants")[1] and using at least the domain names identified in such Schedule A (the "Defendant Domain Names") and the online marketplace accounts identified in such Schedule A (the "Online Marketplace Accounts"), and an order restraining the financial accounts used by Defendants pursuant to 15 U.S.C. § 1116, 35 U.S.C. § 283, Federal Rule of Civil Procedure 65, and The All Writs Act, 28 U.S.C. § 1651(a).

---

[1] Defendant SelectSoma (DOE 5) is not included in the attached Schedule "A". SelectSoma has appeared in this matter and contests entry of a preliminary injunction. The Court will issue a separate order as to SelectSoma.

The Court convened a hearing on July 24, 2024, at which only counsel for Plaintiff and Defendant SelectSoma appeared. No other Defendant made an appearance or responded to the Motion. Accordingly, the Court finds that Plaintiff has satisfied the requirements for issuance of a preliminary injunction as to all Defendants listed in Schedule A except SelectSoma.[2] Therefore, the Court grants Plaintiff's Motion for Preliminary Injunction as to those Defendants.

I.   **FACTURAL BACKGROUND**

Plaintiff is the registered owner of the PURPLE INNOVATIONS Trademarks, which are covered by U.S. Trademark Registration Nos. 5,416,146, 5,224,883, 5,224,901, 5,659,866, 5,661556, 6,546,748, 6,816,315, 6,971,732, 6,971,733, 6,971,734, and 6,975,208 (the "PURPLE INNOVATION Trademarks") and design patents, Patent No. US D991,706 S, D990,930 S, D959,176 S, D951,670 S, D917,926 S, D909,709 S, and D 909,092 S (the "PURPLE INNOVATION Patents"). Declaration of James Larson ("Larson Decl."), ¶ 5. Plaintiff is a leading supplier and manufacturer of exclusive GelFlex® Grid products, such as pillows and mattresses which encompass proprietary technology, and has earned an international reputation for quality, reliability and value with respect to the PURPLE INNOVATION Products. Id., ¶ 6. Plaintiff is the exclusive supplier and manufacturer of PURPLE INNOVATION Products in the United States. Id. Since their introduction, the PURPLE INNOVATION Products have been the subject of substantial and continuous marketing and promotion by Plaintiff in the industry and to consumers. Plaintiff's promotional efforts include, for example, substantial print media, the PURPLE INNOVATION Products' website, and social media sites, and point of sale materials. The PURPLE INNOVATION Trademarks has been continuously used and never abandoned. The success of the PURPLE INNOVATION brand has resulted in its significant infringement and

---

[2] The Motion as to SelectSoma will be addressed in a separate order.

counterfeiting. Larson Decl., ¶ 7. Plaintiff safeguards its brand and investment in the PURPLE INNOVATION Products by way of intellectual property protections. Id. ¶ 5.

The Defendants, through the various Internet based e-commerce stores operating under the seller identities identified on Schedule A (the "Seller IDs"), have advertised, promoted, offered for sale, or sold Counterfeit Products bearing the PURPLE INNOVATION Trademarks and/or embodying the PURPLE INNOVATION Patents, from foreign countries to consumers in this District. Larson Decl., ¶¶ 9-15 & Ex. 3 thereto.

Plaintiff has not licensed or authorized Defendants to use the PURPLE INNOVATION Trademarks or PURPLE INNOVATION Patents, and none of the Defendants is an authorized retailer of genuine PURPLE INNOVATION Products. Larson Decl., ¶ 21.

Plaintiff investigated the promotion and sale of counterfeit and infringing versions of the Plaintiff's branded protected products by the Defendants. *See* Larson Decl., ¶¶ 15-16. Plaintiff accessed each of the e-commerce stores operating under the Defendants' Seller IDs, initiated the ordering process for the purchase of a product from each of the Seller IDs, Counterfeit Products bearing the PURPLE INNOVATION Trademarks and/or embodying the PURPLE INNOVATION Patents at issue in this action, and completed a checkout page requesting each product to be shipped to an address in the Southern District of Florida. *See id*. Plaintiff conducted a review and visually inspected the PURPLE INNOVATION branded items for which orders were initiated by Plaintiff's third-party investigator via the Seller IDs and determined the products were non-genuine, unauthorized versions of Plaintiff's products. *See id*.

**II.     LEGAL STANDARD**

To obtain a preliminary injunction, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3)

that the threatened injury outweighs the harm the relief would inflict on the nonmovant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. Rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case).

### III. CONCLUSIONS OF LAW

The declarations Plaintiff submitted in support of its Motion support the following conclusions of law:

A. Plaintiff has a strong probability of proving at trial that consumers are likely to be confused by Defendants' advertisement, promotion, sale, offer for sale, and/or distribution of Counterfeit Products bearing the PURPLE INNOVATION Trademarks and/or embodying the PURPLE INNOVATION Patents, and that the products Defendants are selling and promoting for sale are Counterfeit Products bearing the PURPLE INNOVATION Trademarks and/or embodying the PURPLE INNOVATION Patents.

B. Because of the infringement of Plaintiff's PURPLE INNOVATION Trademarks and the PURPLE INNOVATION Patents, Plaintiff is likely to suffer immediate and irreparable injury if a preliminary injunction is not granted. The following specific facts, as set forth in Plaintiff's Complaint, Motion, and accompanying declarations, demonstrate that immediate and irreparable loss, damage, and injury will result to Plaintiff and to consumers in view of the following considerations:

1. Defendants own or control e-commerce stores and commercial Internet websites operating under their respective seller identification names and domain names which advertise, promote, offer for sale, and sell products bearing the PURPLE INNOVATION

Trademarks and/or embodying the PURPLE INNOVATION Patents in violation of Plaintiff's respective rights;

        2.       There is good cause to believe that more counterfeit and infringing products bearing the PURPLE INNOVATION Trademarks and/or embodying the PURPLE INNOVATION Patents will appear in the marketplace; that consumers are likely to be misled, confused, and/or disappointed by the quality of these products; and that Plaintiff may suffer loss of sales for its genuine products; and

    C.       The balance of potential harm to Defendants in restraining their trade in counterfeit and infringing branded goods if a preliminary injunction is issued is far outweighed by the potential harm to Plaintiff, its reputation, and its goodwill as manufacturers and distributors of quality products if such relief is not issued.

    D.       The public interest favors issuance of a preliminary injunction to protect Plaintiff's interests, to encourage respect for the law, to facilitate the invention and development of innovative products, and to protect the public from being defrauded by the illegal sale of counterfeit goods.

    E.       Under 15 U.S.C. § 1117(a) and 35 U.S.C. § 289, Plaintiff may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendants' distribution and sales of goods bearing and/or embodying counterfeits and infringements of Plaintiff's Trademarks and/or Patents. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (quoting *Fuller Brush Prods. Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'")).

    F.       Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of

permanent relief." *Levi Strauss & Co.*, 51 F.3d at 987 (11th Cir. 1995) (*citing Federal Trade Commission v. United States Oil & Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984)).

  G. In light of the inherently deceptive nature of the counterfeiting business, and the likelihood that Defendants have violated federal trademark laws, Plaintiff has good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

  Upon review of the Plaintiff's Complaint, Motion, and supporting evidentiary submissions, the Court hereby

  **ORDERS AND ADJUDGES** that the Plaintiff's Motion for Preliminary Injunction is **GRANTED**, under the terms set forth below:

  1. Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily enjoined and restrained from:

    a. Using Plaintiff's PURPLE INNOVATION Trademarks and/or Patents or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine PURPLE INNOVATION product or not authorized by Plaintiff to be sold in connection with Plaintiff's PURPLE INNOVATION Trademarks and/or that embody the design of the PURPLE INNOVATION Patents.

    b. Passing off, inducing, or enabling others to sell or pass off any product as a genuine PURPLE INNOVATION product, or any other product produced by Plaintiff, that is not Plaintiff's product or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the Plaintiff's PURPLE INNOVATION Trademarks and/or

Patents;

  c. Committing any acts calculated to cause consumers to believe that Defendants' products are those sold under the authorization, control or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

  d. Further infringing the Plaintiff's PURPLE INNOVATION Trademarks and/or Patents and/or damaging Plaintiff's goodwill;

  e. Shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear and/or embody any of Plaintiff's PURPLE INNOVATION Trademarks and/or Patents or any reproductions, counterfeit copies, or colorable imitations thereof;

  f. Using, linking to, transferring, selling, exercising control over, or otherwise owning the Online Marketplace Accounts, the Defendant Domain Names, or any other domain name or online marketplace account that is being used to sell or is the means by which Defendants could continue to sell counterfeit products using, bearing, infringing and/or embodying the PURPLE INNOVATION Trademarks and/or Patents; and

  g. Operating and/or hosting websites at the Defendant Domain Names and any other domain names registered or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product using, bearing, infringing and/or embodying the PURPLE INNOVATION Trademarks and/or Patents and/or any reproductions, counterfeit copies, or colorable imitations thereof that is not a genuine PURPLE INNOVATION product or not authorized by Plaintiff to be sold in connection with Plaintiff's PURPLE INNOVATION Trademarks and/or Patents.

2. Each Defendant, within fourteen (14) days after receiving notice of this Order, shall serve upon Plaintiff a written report under oath providing: (a) their true name and physical address, (b) all websites and online marketplace accounts on any platform that they own and/or operate (c) their financial accounts, including by way of example all Amazon, PayPal, Payoneer, LianLian, AllPay, PingPong, Coinbase, Union Mobile, and eBay accounts, and (d) the steps taken by each Defendant to comply with paragraph 1, a through h, above.

3. The domain name registries for the Defendant Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, within three (3) business days of receipt of this Order or prior to expiration of this Order, whichever date shall occur first, shall disable the Defendant Domain Names and make them inactive and untransferable until further ordered by this Court.

4. Those in privity with Defendants and with actual notice of this Order, including the Marketplace Platforms and any other online marketplaces, any financial institutions, including without limitation (i) Contextlogic, Inc. ("Wish"), (ii) PayPal, Inc. ("PayPal"), (iii) Payoneer, Inc. ("Payoneer"), (iv) the Alibaba Group d/b/a Alibaba.com and Aliexpress.com ("Alibaba"), (v) Amazon Payment Systems, Inc. and Amazon.com, Inc. ("Amazon"), (vi) Ping Pong Global Solutions, Inc. ("Ping Pong"), (vii) eBay, Inc. ("eBay"), (viii) Coinbase Global, Inc. ("Coinbase"), (ix) LianLian Global t/as LL Pay U.S., LLC ("LianLian"), (x) GoAllPay ("AllPay"), (xi) Union Mobile Financial Technology Co., Ltd ("Union Mobile"), (xii) World First UK Ltd. ("World First"), (xiii) Paxful, Inc. ("Paxful"), (xiv) Stripe, Inc. ("Stripe"), (xv) USForex, Inc. d/b/a OFX ("OFX"), (xvi) other payment processing service providers, (xvii) merchant account providers, (xviii) payment providers, (xix) third party processors, (xx) banks, (xxi) savings and loan associations, and (xxii) credit card associations (*e.g.*, MasterCard and VISA) (collectively

"Financial Institutions"), social media platforms, Facebook, YouTube, Linkedin, Twitter, Internet search engines such as Google, Bing, and Yahoo, web hosts for the Defendant Domain Names, and domain name registrars, shall within three (3) business days of receipt of this Order:

    a.    disable and cease providing services for any accounts through which Defendants engage in the sale of Counterfeit Goods using, bearing, infringing and/or embodying the PURPLE INNOVATION Trademarks and/or Patents, including any accounts associated with Defendants;

    b.    disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of Counterfeit Goods using, bearing, infringing and/or embodying the PURPLE INNOVATION Trademarks and/or Patents; and

    c.    take all steps necessary to prevent links to the Defendant Domain Names from displaying in search results, including, but not limited to, removing links to the Defendant Domain Names from any search index.

5.    Defendants and any third party with actual notice of this Order who is providing services for any of the Defendants, or in connection with any of Defendants' websites at the Defendant Domain Names or other websites operated by Defendants, including, without limitation, any online marketplace platforms such as Alibaba, AliExpress, Amazon, DHgate, eBay, etsy, Joom, Walmart, Wish, Facebook, Internet Service Providers ("ISP"), web hosts, back-end service providers, web designers, sponsored search engine or ad-word providers, banks, merchant account providers, including Amazon, PayPal, Payoneer, LianLian, AllPay, PingPong, Coinbase, Union Mobile, and eBay, third party processors and other payment processing service providers, shippers, the Financial Institutions, and domain name registrars (collectively, the "Third Party Providers") shall, within five (5) business days after receipt of such notice, provide to Plaintiff

expedited discovery, including copies of all documents and records in such person's or entity's possession or control relating to:

      a.      The identities and locations of Defendants, their agents, servants, employees, confederates, attorneys, and any persons acting in concert or participation with them, including all known contact information;

      b.      The nature of Defendants' operations and all associated sales and financial information, including, without limitation, identifying information associated with the Online Marketplace Accounts, the Defendant Domain Names, and Defendants' financial accounts, as well as providing a full accounting of Defendants' sales and listing history related to their respective Online Marketplace Accounts and Defendant Domain Names;

      c.      Defendants' websites and/or any Online Marketplace Accounts;

      d.      The Defendant Domain Names or any domain name registered by Defendants; and

      e.      Any financial accounts owned or controlled by Defendants, including their agents, servants, employees, confederates, attorneys, and any persons acting in concert or participation with them, including such accounts residing with or under the control of any banks, savings and loan associations, payment processors or other financial institutions, including, without limitation, Amazon, PayPal, Payoneer, LianLian, AllPay, PingPong, Coinbase, Union Mobile, and eBay, or other merchant account providers, payment providers, third party processors, and credit card associations (e.g., MasterCard and VISA).

6.      Defendants and any persons in active concert or participation with them who have actual notice of this Order shall be temporarily restrained and enjoined from transferring or disposing of any money or other of Defendants' assets until further ordered by this Court.

7. Western Union shall, within five (5) business days of receipt of this Order, block any Western Union money transfers and funds from being received by Defendants until further ordered by this Court.

8. The Marketplace Platforms shall, within five (5) business days of receipt of this Order, for any Defendant or any of Defendants' Online Marketplace Accounts or websites:

    a. Locate all accounts and funds connected and/or related to Defendants, Defendants' Online Marketplace Accounts or Defendants' websites, including, but not limited to, any Amazon, PayPal, Payoneer, LianLian, AllPay, PingPong, Coinbase, Union Mobile, and eBay accounts connected and/or related to the information listed in Schedule A to the Complaint; and

    b. Restrain and enjoin any such accounts or funds from transferring or disposing of any money or other of Defendants' assets until further ordered by this Court.

9. The Financial Institutions, any banks, savings and loan associations, payment processors, or other financial institutions, for any Defendant or any of Defendants' Online Marketplace Accounts or websites, shall within five (5) business days of receipt of this Order:

    a. Locate all accounts and funds connected and/or related to Defendants, Defendants' Online Marketplace Accounts or Defendants' websites, including, but not limited to, any accounts connected and/or related to the information listed in Schedule A to the Complaint; and

    b. Restrain and enjoin any such accounts or funds from transferring or disposing of any money or other of Defendants' assets until further ordered by this Court.

10. Plaintiff may provide notice of these proceedings to Defendants by electronically publishing a link to the Complaint, this Order and other relevant documents on a website or by sending an e-mail to all e-mail addresses identified by Plaintiff and any e-mail addresses provided

for Defendants by third parties that includes a link to said website. The combination of providing notice via electronic publication or e-mail, along with any notice that Defendants receive from domain name registrars and payment processors, shall constitute notice reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections.

11. Plaintiffs' Schedule A to the Complaint, Exhibit 3 to the Declaration of James Larson, and the Temporary Restraining Order entered in this action shall be unsealed.

12. Any Defendants that are subject to this Order may appear and move to dissolve or modify the Order on two days' notice to Plaintiff or on shorter notice as set by this Court.

13. The ten-thousand-dollar ($10,000.00) bond posted by Plaintiff shall remain with the Court until a final disposition of this case or until this Preliminary Injunction is terminated.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 29th day of July, 2024.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

**SCHEDULE A**

| DOE No. | Defendant Seller | Defendant Seller URL |
|---|---|---|
| 1 | Aiouarc | https://www.amazon.com/sp?seller=A31VZKTNZ3A5V0 |
| 2 | Cheng Li SHop | https://www.amazon.com/sp?seller=A105Z6LAOIXIDG |
| 3 | ChenKunUS | https://www.amazon.com/sp?seller=A3IA83S13GRE9J |
| 4 | LiTaoUS | https://www.amazon.com/sp?seller=A1G5T49J784QA3 |