**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No. 1:24-cv-21362-GAYLES/GOODMAN**

PURPLE INNOVATION, LLC,

      Plaintiff,

v.

THE INDIVIDUALS, CORPORATIONS,
LIMITED LIABILITY COMPANIES,
PARTNERSHIPS, AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A"

      Defendants.

_____/

**PUBLIC, NON-REDACTED[1] REPORT AND RECOMMENDATIONS**
**ON DEFENDANT SELECTSOMA'S MOTION TO DISMISS**

      In this intellectual property action, Defendant Henson Holdings, LLC d/b/a

SelectSoma ("Defendant" or "SelectSoma")[2] filed a motion to dismiss Plaintiff Purple

---

[1]      In the Sealed version of this same Report and Recommendations ("R&R"), I instructed the parties to jointly file a redacted version of this R&R because "the Undersigned generally disfavors filings things outside of the public view (but understands the importance of keeping certain information private) [.]" [ECF No. 70, p. 1 n.1]. On October 22, 2024, the parties jointly filed a notice "that neither party proposes any redactions" and publicly attached a copy of my Sealed R&R to it. [ECF No. 72]. Therefore, the Undersigned issues this public version of the R&R pursuant to the parties' notice.

[2]      There are five defendants in this action: Defendant No.1 Aiouarc; Defendant No. 2 Cheng Li Shop; Defendant No. 3 ChenKunUS; Defendant No. 4 LiTaoUS; and Defendant

Innovation, LLC's ("Plaintiff") Complaint [ECF No. 1], arguing that both parties previously resolved the disputes raised in the Complaint, and that Plaintiff's Complaint fails to state a claim. [ECF Nos. 35; 39]. Plaintiff filed a response, and Defendant filed a reply. [ECF Nos. 58; 62]. United States District Judge Darrin P. Gayles referred the motion to the Undersigned for a report and recommendations. [ECF No. 64].

For the reasons outlined below, the Undersigned **respectfully recommends** that Judge Gayles **grant** the motion and **dismiss** the Complaint (albeit **without** prejudice and with **leave** to file an amended complaint). However, as we shall soon see, the basis for this ruling is not the purported resolution, as that argument relies on extrinsic exhibits which the Court cannot consider on a motion to dismiss.

## I.   Factual Background (*i.e.*, Plaintiff's Allegations)

Plaintiff's Complaint contains two causes of action: Trademark Infringement and Counterfeiting under 15 U.S.C. § 1114 (Count I), and Design Patent Infringement under 35 U.S.C. § 271 (Count II). [ECF No. 1]. Plaintiff originally brought Count I against Defendant but later stipulated to dismissing it with prejudice against Defendant. [ECF No. 26].[3] Therefore, the following allegations concern Count II, "Design Patent Infringement":

---

No. 5 SelectSoma. [ECF No. 12]. As of October 9, 2024, only Defendant SelectSoma has participated in this action, and the remaining four defendants have defaulted. [ECF No. 68].

[3]     Count I involves eleven different registered trademarks. [ECF No. 1-1]. Plaintiff stipulated to dismissing Count I with prejudice as to U.S. Trademark Registration No. 5,661,556. With regards to the remaining ten trademarks, Plaintiff agreed to dismiss Count I without prejudice as to Defendant SelectSoma. [ECF No. 26, ¶¶ 1-2].

2.     This is also an action for patent infringement to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by making, using, offering for sale, selling and/or importing into the United States for subsequent sale or use, unauthorized and unlicensed products that infringe Plaintiff's design patents, U.S. Patent Nos. US D991,706 S, D990,930 S, D959,176 S, D951,670 S, D917,926 S, D909,790 S, and D 909,092 S (the "PURPLE INNOVATION Patents"). The PURPLE INNOVATION Patents are valid, subsisting, and in full force and effect. Plaintiff is the owner and lawful assignee of all right, title, and interest in and to the PURPLE INNOVATION Patents, which were duly and legally issued by the United States Patent and Trademark Office.[4]

3.     Defendants are improperly advertising, marketing and/or selling unauthorized and noncompliant products by reference to marks identical or substantially identical to the PURPLE INNOVATION Trademarks and/or that embody the design(s) depicted in the PURPLE INNOVATION Patents (the "Counterfeit Products").

4.     [ ] Defendants have created numerous fully interactive commercial internet stores operating under the online marketplace accounts (the "Defendant Internet Stores") and using the account names identified in Schedule A (collectively, the "Defendants").

5.     [ ] Defendants design the online marketplace accounts to appear to be selling Plaintiff's genuine PURPLE INNOVATION Products (the "PURPLE INNOVATION Products"), while selling inferior imitations of such products.

6.     [ ] Defendants' online marketplace accounts also share unique identifiers, such as design elements and similarities of the Counterfeit Products offered for sale, establishing a logical relationship between them and suggesting that [the] Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences.

7.     Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation. Plaintiffs are [sic] forced to file this action to combat Defendants' counterfeiting of the PURPLE INNOVATION Trademarks and PURPLE INNOVATION Patents, as well as to protect unknowing consumers from purchasing Counterfeit Products.

---

[4]     Plaintiff attached a copy of these patents to the Complaint. [ECF No. 1-2].

***

14. Plaintiff PURPLE INNOVATION, LLC is a limited liability company organized under the laws of the State of Delaware and is the registered owner of the PURPLE INNOVATION Trademarks (referred to above, copies of federal registrations attached as Exhibit 1) and the PURPLE INNOVATION Patents (referred to above, copies attached as Exhibit 2).

15. Plaintiff is a leading supplier and manufacturer of the exclusive GelFlex® Grid products, such as pillows and mattresses which encompass proprietary technology, and has earned an international reputation for quality, reliability and value. Plaintiff is credited for many breakthroughs that have occurred in the industry, including its PURPLE INNOVATION Products.

***

28. On personal knowledge and belief, Defendants facilitate sales by designing Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine PURPLE INNOVATION Products.

29. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, and PayPal. Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website.

30. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos.

31. Plaintiff has not licensed or authorized Defendants to use the PURPLE INNOVATION Trademarks or PURPLE INNOVATION Patents, and none of the [d]efendants are authorized retailers of genuine PURPLE INNOVATION Products.

32. On personal knowledge and belief, Defendants deceive unknowing consumers by using the PURPLE INNOVATION Trademarks and/or PURPLE INNOVATION Patents without authorization within the product descriptions of their Defendant Internet Stores to attract customers, as well as embodied by the Counterfeit Products themselves.

***

45.     Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the PURPLE INNOVATION Trademarks and PURPLE INNOVATION Patents in connection with the advertisement, distribution, offering for sale, sale and import of Counterfeit Products into the United States and Florida over the Internet.

46.     Each [d]efendant Internet Store offers shipping to the United States, including Florida (in this Judicial District) and, on information and belief, each [d]efendant has offered to sell Counterfeit Products into the United States, including Florida (in this Judicial District), which is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

***

55.     Defendants are and have been making, using, selling, offering for sale, and/or importing into the United States for subsequent sale or use, without authority, Counterfeit Products that infringe directly and/or indirectly the PURPLE INNOVATION Patents.

***

57.     Defendants' activities constitute willful patent infringement under 35 U.S.C. § 271.

58.     Defendants have infringed the PURPLE INNOVATION Patents through the aforesaid acts and will continue to do so unless enjoined by this Court. Defendants' wrongful conduct has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented invention.

59.     Plaintiff is entitled to injunctive relief pursuant to 35 U.S.C. § 283.

60.     Plaintiff is entitled to recover damages adequate to compensate for the infringement pursuant to 35 U.S.C. §§ 284, 289, including Defendants' profits.

[ECF No. 1, ¶¶ 2–7; 14–15; 28–32; 45–46; 55; 57–60].

## II.   <u>Applicable Legal Standards</u>

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). To meet

this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

(citing *Twombly*, 550 U.S. at 556). The standard "does not require 'detailed factual

allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-

me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for

more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

On a motion to dismiss, "the court must accept all factual allegations in a complaint

**as true** and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase &

Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (emphasis added).

Federal Rule of Civil Procedure 8(a) requires only "a short and plain statement of the

claim showing that the pleader is entitled to relief." It does not "require that a plaintiff

specifically plead every element of a cause of action." *Balaschak v. Royal Caribbean Cruises,

Ltd.*, No. 09-21196, 2009 WL 8659594, at *6 (S.D. Fla. Sept. 14, 2009) (citing *Roe v. Aware

Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001), which, in turn, cited Jack H.

Friedenthal, et al., Civil Procedure, § 5.7 (2d ed. 1993) for the view that "[w]hat the pleader

need not do is worry about the particular form of the statement or that it fails to allege a

specific fact to cover every element of the substantive law involved.").

III.   **Analysis**

Defendant argues that Plaintiff's Complaint should be dismissed with prejudice because the parties "previously resolved[5] the dispute [Plaintiff] improperly brings forth [,]" and because the Complaint's "mere formulaic recitation of the elements of claims for . . . patent infringement [ ] are insufficient to meet pleading requirements." [ECF No. 39, p. 1].

There are two approaches a defendant can take in attacking a complaint: "(1) a facial attack, which challenges whether the plaintiff has alleged a basis for subject matter jurisdiction, taking all allegations in the complaint as true; and/or (2) a factual attack, which challenges the existence of subject matter jurisdiction irrespective of the pleadings, and allows extrinsic evidence to be considered." *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1230 (11th Cir. 2021).

These "two forms of attack differ substantially." *Lawrence v. Dunbar*, 919 F. 2d 1525, 1529 (11th Cir. 1990). "While facial attacks afford plaintiffs 'safeguards similar to those provided in opposing a Rule 12(b)(6) motion,' factual attacks offer no presumption of truthfulness to plaintiffs' allegations and 'the existence of disputed material facts will not

---

[5]   Defendant attached to its dismissal motion a copy of the settlement agreement allegedly resolving this dispute. [ECF No. 39-1]. The parties entered into the agreement after Plaintiff sued Defendant in the United States District Court for the District of Utah, *Purple Innovation v. Chuang Fan Handicraft et al.*, Case No. 2:22-cv-00620-DBP and the International Trade Commission ("ITC"), *In the Matter of Certain Pillows and Seat Cushions, Components Thereof, and Packaging Thereof*, Case No. 337-TA-1328.

preclude the trial court from evaluating for itself the merits of jurisdictional claims.'" *Betancourt v. River Lanes of Titusville Inc*, No. 6:23-CV-414-PGB-DCI, 2023 WL 4405487, at *2 (M.D. Fla. July 7, 2023) (quoting *Lawrence*, 919 F. 2d at 1529).

Here, Defendant's motion presents both a factual and a facial attack on Plaintiff's Complaint. Defendant's motion is based on Rules 12(b)(1) and 12(b)(6) and relies upon extrinsic evidence, such as a copy of the parties' past settlement agreement and emails. "A motion to dismiss for lack of subject matter jurisdiction brought pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure can be asserted on facial or factual grounds." *Hossfeld v. Am. Fin. Sec. Life Ins. Co.*, 544 F. Supp. 3d 1323, 1329 (S.D. Fla. 2021) (citing *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009)).

"In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010) (citing *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *see also Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.")). Defendant contends that its extrinsic evidence meets those two qualifications. [ECF No. 39, p. 15].

Plaintiff argues that Defendant is barred from relying on extrinsic evidence such as the settlement agreement and emails because it is an "indirect attack on the merits of

Plaintiff's claim" and "not the Court's ability to hear the subject matter of the case." [ECF No. 58-1, p. 6]. It implies that Defendant's arguments are a *de facto* trojan horse to improperly introduce evidence that "goes beyond the four corners of the Complaint[.]" *Id*. Plaintiff included the following instructions from the Eleventh Circuit in its response:

> The *Williamson* court discussed the standard by which a district court should decide factual attacks on subject matter jurisdiction when the defendant's attack also implicates an element of the cause of action:

> [T]he proper course of action for the district court . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case. . . . Judicial economy is best promoted when the existence of a federal right is directly reached and, where no claim is found to exist, the case is dismissed on the merits. This refusal to treat indirect attacks on the merits as Rule 12(b)(1) motions provides, moreover, a greater level of protection to the plaintiff who in truth is facing a challenge to the validity of his claim: the defendant is forced to proceed under Rule 12(b)(6) . . . or Rule 56 . . . both of which place great restrictions on the district court's discretion. . . . [A]s a general rule a claim cannot be dismissed for lack of subject matter jurisdiction because of the absence of a federal cause of action. The exceptions to this rule are narrowly drawn, and are intended to allow jurisdictional dismissals only in those cases where the federal claim is clearly immaterial or insubstantial.

*Id. (*quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (quoting *Williamson v. Tucker*, 645 F. 2d 404, 415 (5th Cir. 1981)).

Defendant contends that the settlement agreement "is of paramount importance to the current claims, as it was the cause for the dismissal [of Count I]." [ECF No. 62, p. 3]. It acknowledges that the Court's "power to make findings of facts and to weigh the evidence depends on whether the factual attack on jurisdiction also implicates the **merits** of [P]laintiff's cause of action." *Id*. at 5 (quoting *Kennedy v. Floridian Hotel Inc.*, No. 1:18-CV-

20839-UU, 2018 WL 10601975, at *2 (S.D. Fla. May 15, 2018) (citing *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997) (emphasis in original)). Defendant states that its 12(b)(1) arguments do not implicate the *merits* of Count II, and that "infringement is not an issue in the motion." *Id*. The Undersigned disagrees. Count II is based on design patent infringement. Defendant wants the Court to review the extrinsic evidence (such as the settlement agreement) to illustrate how Plaintiff supposedly permitted Defendant to produce the alleged-infringing product.

Infringement is generally defined as "whoever **without authority** makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent[.]"35 U.S.C. § 271 (emphasis added). If Defendant had permission to produce the product, then it would not be infringement because Plaintiff had hypothetically given it permission to do so. Therefore, Defendant's 12(b)(1) arguments *directly* implicate Count II's merits, and, as Defendant states, "[o]nly when the defendant's attack also implicates an element of the cause of action is the defendant forced to proceed under Rule 12(b)(6)." [ECF No. 62, p. 5 (*quoting Lawrence*, 919 F. 2d at 1529)]. Consequently, the Undersigned will not consider Defendant's 12(b)(1) arguments nor its relied-upon extrinsic evidence, and will restrict the motion's analysis to Rule 12(b)(6).[6]

---

[6]     This also includes Defendant's request for attorney's fees and costs pursuant to the settlement agreement. Defendant may file a separate appropriate request for relief outside of this motion in accordance with federal and local rules.

Defendant makes a parallel argument with regards to its extrinsic evidence being considered for 12(b)(6) purposes because "the documents are central to the claims-at-hand and their authenticity is undisputed."[7] [ECF No. 39, p. 13 (citing *Physician's Cent. Bus. Off. & Affiliate v. Underwriters at Lloyd's, London*, No. 1:20-CV-23592, 2024 WL 580345, at *6 (S.D. Fla. Feb. 13, 2024) (Gayles, J.))]. The Undersigned disagrees because not only does the Complaint fail to make any reference to Defendant's extrinsic evidence including the settlement agreement, but the evidence is not central to Plaintiff's claims. *Day*, 400 F.3d at 1276 ("Our prior decisions also make clear that a document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, we may consider such a document provided it meets the centrality requirement imposed in *Horsley [v. Feldt,* 304 F.3d 1125, 1134 (11th Cir. 2002)]."). "A document is 'central' to a claim when its contents are at 'the very heart' of the dispute." *Healthier Choices Mgmt. Corp. v. Philip Morris USA, Inc.*, 65 F.4th 667, 676 (Fed. Cir. 2023) (quoting *Day*, 400 F. 3d at 1276). "For example, a contract is central to a contract dispute and a patent is central to a patent infringement case." *Id*.

Defendant's extrinsic evidence is at the heart of ***its*** arguments, not Plaintiff's claims. In describing how each of its exhibits is "central to" Plaintiff's claims, Defendant's reasoning makes no mention of, nor includes any specific references or comparisons to, the Complaint.

---

[7]     The Undersigned notes that Plaintiff does not dispute the authenticity of Defendant's evidence.

For example, Exhibit A is the settlement agreement that was reached after the parties were involved in two previous separate litigations.[8] Defendant argues that this agreement led to the current alleged product-at-issue and that this product gave rise to the Complaint. But Plaintiff's claims are about its valid patent or trademark being infringed. The Complaint makes no reference to this previous litigation between the parties nor their settlement agreement. In fact, the Complaint fails to include any specific details related to Defendant, including its name. Additionally, as Defendant declared in its reply, "[i]nfringement is **not an issue** in the [m]otion." [ECF No. 62, p. 5 (emphasis added)]. Infringement is a necessary element to Plaintiff's claims, and if Defendant's evidence is not disputing the validity of Plaintiff's patents nor their alleged infringement, then it is simply not central to Plaintiff's claims.

Defendant cites *Yost-Rudge v. City of Stuart*, No. 23-14270-CIV, 2024 WL 1513898, at *5 (S.D. Fla. Mar. 18, 2024), *report and recommendation adopted*, No. 23-14270-CIV, 2024 WL 1513894 (S.D. Fla. Apr. 8, 2024) (appeal pending) for support, and described the case as "considering a settlement agreement under 12(b)(6) and granting [the] defendants' motion to dismiss as the agreement had settled [the] plaintiff's (sic) disputes." *Id*. at 4.

In *Yost-Rudge*, the plaintiffs sued the City of Stuart alleging that "they were illegally deprived of their property through various code enforcement actions and unlawfully denied hearings in various cases[.]" 2024 WL 1513894 at *5. The plaintiffs' complaint

---

[8]     Exhibits B and C are the complaints associated with those cases.

specifically mentioned multiple state court cases. *Id*. at *1. When the defendants filed their 12(b)(6) motion, they attached a copy of a settlement agreement between the parties and an affidavit. *Id*. The *Yost-Rudge* Court considered the evidence over the plaintiffs' objection. *Id*. at *5. The *Yost-Rudge* Court held that the evidence was "sufficiently central" to the plaintiffs' claims because the settlement agreement was tethered to the lawsuits and legal action *specifically* mentioned in the complaint. *Id*.

Here, Plaintiff's Complaint does not specifically mention (nor broadly reference) any of the litigation history Defendant wants the Court to rely on to justify the requested dismissal. Defendant's arguments, at least at this procedural point, are the only thing tying its evidence to the Complaint. As noted, this evidence is central to its claims, not Plaintiff's. Therefore, the Undersigned will not rely upon Defendant's extrinsic evidence in reviewing its 12(b)(6) arguments because the evidence is not "at the heart" of Plaintiff's claims. Defendant may bring this evidence to the Court's attention again at a future stage of this litigation, such as the summary judgment or trial stage.

Relying on Rule 12(b)(6), Defendant then argues that the Complaint should be dismissed because Plaintiff's "allegations are insufficient and fail to 'raise a right to relief above the speculative level' to survive a motion under Federal Rule of Civil Procedure 12(b)(6)." [ECF No. 39, p. 14]. The Undersigned agrees.

As previously stated, Plaintiff's Complaint contains two counts. Before Plaintiff's Stipulated Dismissal of Count I against Defendant [ECF No. 26], both counts were alleged

against all five Defendants. However, the Complaint is problematic because of its lack of specificity. The issues that plague Count II also plague Count I because the Complaint: (1) fails to differentiate between Defendants or their actions in either count; (2) contains mere, conclusory recitations of the claim elements; and (3) never mentions Defendant by name. At bottom, Plaintiff's Complaint is considered an impermissible shotgun pleading.

A shotgun pleading is a pleading that is "virtually impossible to know which allegations of facts are intended to support which claim(s) for relief." *Anderson v. Dis. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996). In *Weiland v. Palm Beach Cnty. Sherriff's Off.*, the Eleventh Circuit established four types of shotgun pleadings: (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts[;]" (2) a complaint with "conclusory, vague, and immaterial facts not obviously" associated with a specific cause of action; (3) a complaint that fails to set out each claim into various counts; and (4) a complaint with "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." 792 F.3d 1313, 1321–23 (11th Cir. 2015).

"Shotgun pleadings are condemned by the Eleventh Circuit, which has specifically instructed district courts to dismiss shotgun pleadings as 'fatally defective.'" *Smith v. Carnival Corp.*, No. 22-cv-22853, 2022 WL 16791783, at *2 (S.D. Fla. Nov. 8, 2022) (granting cruise ship operator's motion to dismiss and quoting *B.L.E. v. Ga.*, 335 F. App'x 962, 963 (11th

Cir. 2009)). "Overall, shotgun pleadings do not establish a connection between 'the substantive count and the factual predicates . . . [and] courts cannot perform their gatekeeping function with regard to the averments of [the plaintiff's claim]." *Id.* (quoting *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279–80 (11th Cir. 2006)).

As noted above in the citation to *Weiland*, the Eleventh Circuit has identified four types of shotgun pleadings:

> The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as [the Eleventh Circuit's] published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.

792 F.3d at 1321–23 (footnotes omitted).

Plaintiff's Complaint falls within the fourth type of shotgun pleading because it asserts Count II against all Defendants "without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id*. Both counts merely include a generic recitation of the elements, an image comparing Plaintiff's product with an infringing product (but nothing indicating which

Defendant that product is attributed to), a statement that Defendants' activities constitute willful infringement under the relevant statute, and how Defendants' conduct caused Plaintiff irreparable harm.

Plaintiff acknowledges that "[t]o establish a case of patent[9] infringement, Plaintiff must prove two elements: (a) that it owns a duly issued patent and (b) that the defendant has infringed its patent." [ECF No. 58-1, p. 6 (quoting *A.W. Indus. Inc. v. Elec. Connector Serv. Inc.*, 1997 WL 873869, at *6 (S.D. Fla. Nov. 24, 1997))]. Plaintiff also states that to evaluate whether a product infringes on a patent, the Court must: "(1) interpret the claims followed by (2) comparing the properly interpreted claims to the accused device." *Id*. However, the Complaint is void of anything allowing the Court to compare Plaintiff's claims with the accused devices from each Defendant. Both of the images within the counts fail to specify which Defendant they are attributed to here.

Judge Gayles dismissed a similarly problematic complaint in *Peleg Design Ltd. v. Individuals, Corps., Ltd. Liab. Companies, Partnerships, & Unincorporated Associations Identified on Schedule "A" to the Complaint*, No. 1:23-CV-24672, 2024 WL 1759139, at *2 (S.D. Fla. Apr.

---

[9]    To establish a trademark infringement claim, "Plaintiff must demonstrate that (1) it had prior rights to the mark at issue; and (2) Defendants adopted a mark or name that was the same, or confusingly similar to Plaintiff's trademarks, such that consumers were likely to confuse the two. *Run-Tiger, LLC v. Individuals, Corps., Ltd. Liab. Companies, Partnerships, & Unincorporated Associations Identified on Schedule A to Complaint*, No. 1:23-CV-23185, 2024 WL 1860966, at *3 (S.D. Fla. Mar. 29, 2024), *report and recommendation adopted*, No. 23-23185-CV, 2024 WL 1859760 (S.D. Fla. Apr. 29, 2024) (citing *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001)).

24, 2024).[10] There, the Court ordered the plaintiff to explain whether its joinder of 176 defendants was proper under Federal Rule of Civil Procedure 20. Judge Gayles reviewed the plaintiff's filings and found that joinder was improper because the Complaint lacked specificity and that a joinder would not promote judicial economy. Judge Gayles found that the complaint was not specific enough because:

> While there may be some common questions of law and fact as to the [d]efendants, the Complaint does not allege how each [d]efendant's acts of infringement "[arose] out of the same transaction, occurrence, or series of transactions or occurrences" of all the other [d]efendants. Fed. R. Civ. P. 20(a)(2)(A). *See [Omega, SA v. Individuals, Bus. Entities, & Unincorporated Associations Identified on Schedule "A",* 650 F. Supp. 3d 1349,] 1352 (S.D. Fla. 2023) ("One defendant's alleged . . . infringement does not necessarily arise out of the same transaction, occurrence, or series of transactions or occurrences as another's unrelated infringement of the same [patent].)"; *Kay v. Individuals, Partnerships, & Unincorporated*, No. 23-22755-CIV, 2023 WL 6809762, at *2 (S.D. Fla. Oct. 16, 2023). [The] [p]laintiff alleges that [d]efendants' Internet Stores have similar layouts and bear indicia of being related to one another and that [d]efendants engage in similar approaches to selling their counterfeit goods. However, [the] [p]laintiff has not explained how having similar storefronts or using the same approach to infringe upon the same copyright or patent, without more, establishes that [d]efendants' infringements are logically related. In addition, [the] [p]laintiff's speculation that the infringing products come from a common source is insufficient to support joinder. Importantly, [the] [p]laintiff does not explain how ordering joint and several relief against all [d]efendants would be proper. *See Kay*, 2023 WL 6809762 at *2.

*Id.*; *see also Zuru Inc. v. Individuals, Partnerships, & Unincorporated Associations Identified on Schedule "A"*, No. 1:22-CV-23504-KMM, 2023 WL 4014802, at *2 (S.D. Fla. Feb. 28, 2023) (same).

---

[10]     Plaintiff's counsel also represented the plaintiff in this action. Therefore, counsel was on notice of the Complaint's problematic lack of specificity.

Therefore, Plaintiff's Complaint should be dismissed under 12(b)(6) because it fails to state a claim. Plaintiff's Complaint improperly lumps all Defendants and their actions together as if they were in concert with one another. The lack of specificity within it bars the Court from determining whether Plaintiff has met the necessary elements (of either claim) against **each** Defendant. Additionally, because Plaintiff fails to detail how each Defendant caused irreparable harm, such harm is baseless speculation.

## IV.     Conclusion

The Undersigned **respectfully recommends** that Judge Gayles **grant** Defendant's motion to dismiss and dismiss the Complaint, albeit **without prejudice** and with **leave** to amend.

## V.     Objections

The parties will have eight (8)[11] days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within fourteen (14) days of the objection. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in

---

[11]     This deadline is shortened to match the one set in the original Sealed version of this R&R because it is the same filing but with a different title. [ECF No. 70].

this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

      **RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, October 22, 2024.

                                                              _____

                                               Jonathan Goodman
                                               UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Darrin P. Gayles
All Counsel of Record